UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

JERMICHAEL CARROLL,

          Plaintiff,

     v.                                                    Case No. 24-cv-0471-bhl

WISCONSIN DEPARTMENT OF CORRECTIONS,
KEVIN A. CARR,
JARED HOY,
MELISSA ROBERTS,
RANDALL HEPP,
EMILY PROPSON, and
YANA PUSICH,

          Defendants.

---

## SCREENING ORDER

---

Plaintiff Jermichael Carroll, who is currently serving a state prison sentence at Waupun Correctional Institution and representing himself, filed a complaint under 42 U.S.C. §1983, alleging that his civil rights were violated. This matter comes before the Court on Carroll's motion for leave to proceed without prepaying the full filing fee and to screen the complaint.

### MOTION TO PROCEED WITHOUT PREPAYING THE FILING FEE

Carroll has requested leave to proceed without prepaying the full filing fee (*in forma pauperis*). A prisoner plaintiff proceeding *in forma pauperis* is required to pay the full amount of the $350.00 filing fee over time. *See* 28 U.S.C. §1915(b)(1). As required under 28 U.S.C. §1915(a)(2), Carroll has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint and has been assessed and paid an

initial partial filing fee of $11.23. Carroll's motion for leave to proceed without prepaying the filing fee will be granted.

## SCREENING OF THE COMPLAINT

The Court has a duty to review any complaint in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity and must dismiss any complaint or portion thereof if the prisoner has raised any claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b). In screening a complaint, the Court must determine whether the complaint complies with the Federal Rules of Civil Procedure and states at least plausible claims for which relief may be granted. To state a cognizable claim under the federal notice pleading system, a plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). It must be at least sufficient to provide notice to each defendant of what he or she is accused of doing, as well as when and where the alleged actions or inactions occurred, and the nature and extent of any damage or injury the actions or inactions caused.

"The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content

that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 556. "[T]he complaint's allegations must be enough to raise a right to relief above the speculative level." *Id*. at 555 (internal quotations omitted).

## ALLEGATIONS OF THE COMPLAINT

According to Carroll, his institution "has been on an unwarranted, unnecessary, and detrimental lockdown" for twelve months. He states that the lockdown contradicts the institution's purpose statement to "encourage[e] positive growth and enable[e] inmates to successfully reenter society." He explains that the handbook encourages inmates to stay healthy in prison by staying in contact with family and friends, getting an education or skill, taking treatment and programming seriously, and going to recreation, yet during the lockdown, visitation has been suspended, there is no opportunity for education, there is limited opportunity for treatment, and recreation is a rare, limited option. Dkt. No. 1 at 2.

Carroll explains that the lockdown was ordered on March 18, 2023, in response to an incident that did not involve him. He asserts that for the first few months all inmates were confined to their cells at all times. Inmates were not allowed to work, participate in school or religious services, use the library, make or receive calls, or receive health or psychological services. He states that during the first two weeks, an institution-wide shakedown was conducted to search for weapons, cell phones, and drugs. He states that all cells were searched, and inmates were strip searched. He states that he was strip searched in a dirty cell with an open cell front, making him visible to others. According to Carroll, contraband was seized and offending inmates were placed in segregation, eliminating the general risk throughout general population. Dkt. No. 1 at 2-3.

In an April 2023 memo, Defendant Warden Hepp explained that lockdown status would be changed from restricted movement to modified movement. Carroll explains that despite the

3

name change to "modified movement," inmate movement was still not allowed. Hepp justified the continued lockdown by pointing to minor infractions such as inmates passing items between cells, covering their cell fronts, and being too loud. According to Carroll, Hepp seemed to want inmates to police the conduct of other inmates, which placed all inmates in danger. Carroll also asserts that all inmates were held accountable for the wrongdoing of only a few. Dkt. No. 1 at 4.

Carroll explains that he is confined to his cell twenty-four hours a day for six to seven days a week. He is denied sunlight, fresh air, and basic human contact. He states that his access to medical or psychological services is restricted, and for the first three months, the only inmates who were allowed to see psychological services were those who threatened suicide. He states that limited access to recreation was allowed three months into the lockdown (once per week), but staff unfairly denied recreation based on a "compliance system" that was left to staff's discretion. Dkt. No. 1 at 4-5.

Carroll also asserts that he has been unable to clean his living area because of movement restrictions and staff's refusal to regularly distribute cleaning supplies. He states that he has been exposed to rat, mouse, and bird droppings and human waste thrown by inmates in the cells above and to the side of his. He also asserts that the ventilation system has not been cleaned, so stale air, dust, and detritus constantly enter his cell. Dkt. No. 1 at 3.

Carroll explains that being locked in his cell all day has caused him substantial stress, anxiety, fear, frustration, and despondency. Dkt. No. 1 at 3.

### THE COURT'S ANALYSIS

Carroll alleges that a year-long lockdown has deprived him of recreation time (including fresh air, sunlight, and human contact), medical and psychological services, visitations with family and friends, and a clean living environment. He states that these circumstances have led to various

4

health conditions, including stress, anxiety, and despondency. The Seventh Circuit has held that institution-wide lockdowns that severely limit an inmate's movement are sufficient to state a claim under the Eighth Amendment. *See, e.g., Turley v. Rednour*, 729 F.3d 645, 652-53 (7th Cir. 2013) (explaining that persistent lockdowns resulting in an inability to exercise may violate the Eighth Amendment if imposed without proportional justification); *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996) (same); *James v. Pfister*, 708 F. App'x 876, 879 (7th Cir. 2017). Of course, a valid justification for the continued lockdown may be raised in due course, but at this stage, Carroll has stated a viable claim.

Although Carroll states an Eighth Amendment claim, the Court will not allow him to proceed against everyone he names as a Defendant. Under §1983, only those individuals who are personally involved in a violation may be sued. *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996). According to the complaint, Hepp made the decision to order an extended lockdown, so Carroll states a claim against him. But Carroll may not proceed against the remaining individuals he names as Defendants. As to the Secretary, Deputy Secretary, and Assistant Deputy Secretary of the Department of Corrections, Carroll does not allege that they were aware of the lockdown or, more importantly, that they were aware of the alleged impact of the lockdown on Carroll, so he does not state a claim against them. *See Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (explaining that the doctrine of respondeat superior cannot be used to hold a supervisor liable for the misconduct of a subordinate). As to the institution's deputy warden and security director, Carroll makes no allegations about their involvement in ordering the lockdown, and nothing suggests that they had the authority to override the warden's decision, so he fails to state a claim against them. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("Public officials do not have a free-floating obligation to put things to rights, disregarding rules . . . along the way.

5

Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job."). Finally, Carroll may not sue the Wisconsin Department of Corrections, which is an agency of the State of Wisconsin. As the Seventh Circuit has explained, "[t]he State of Wisconsin cannot be sued under 42 U.S.C. § 1983 . . . both because a state is not a 'person' for purposes of that statute, and because a suit against a state for money damages is barred by the Eleventh Amendment." *Smith v. U.S.*, 298 F. App'x 510 (7th Cir. 2008).

**IT IS THEREFORE ORDERED** that Carroll's motion for leave to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**.

**IT IS FURTHER ORDERED** that Carroll fails to state a claim against the Wisconsin Department of Corrections, Kevin A. Carr, Jared Hoy, Melissa Roberts, Emily Propson, and Yana Pusich, so the clerk's office is directed to terminate them from this action.

**IT IS FURTHER ORDERED** that pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Carroll's complaint and this order are being electronically sent today to the Wisconsin Department of Justice for service on Randall Hepp.

**IT IS FURTHER ORDERED** that pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, Randall Hepp shall file a responsive pleading to the complaint within **sixty days** of receiving electronic notice of this order.

**IT IS FURTHER ORDERED** that copies of this order be sent to the officer in charge of the agency where Carroll is located.

**IT IS FURTHER ORDERED** that the agency having custody of Carroll shall collect from his institution trust account the $338.77 balance of the filing fee by collecting monthly payments from Carroll's prison trust account in an amount equal to 20% of the preceding month's income

credited to the prisoner's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If Carroll is transferred to another institution, the transferring institution shall forward a copy of this Order along with Carroll's remaining balance to the receiving institution.

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions.

**IT IS FURTHER ORDERED** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the Court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS. It will only delay the processing of the matter.

Carroll is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Enclosed is a guide prepared by court staff to address common questions that arise in cases filed by prisoners. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that Carroll may find useful in prosecuting this case

Dated at Milwaukee, Wisconsin on June 18, 2024.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge